IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JON WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LINDBERGH, | ) Case No. 12–cv–0769–MJR–SCW |
| ANTHONY, | ) |
| MCKAMICK, | ) |
| LASHBROOK, and | ) |
| FITZGERALD, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM AND ORDER

REAGAN, Chief Judge:

INTRODUCTION AND PROCEDURAL HISTORY

This § 1983 civil rights case comes before the Court on a Motion for Summary Judgment filed by two of the five remaining Defendants, Lashbrook and McKamick. (Doc. 69). The lawsuit was filed in 2012, and alleges that the *pro se* Plaintiff, currently incarcerated at Pontiac Correctional Center, suffered constitutional violations when Defendants acted with deliberate indifference to his safety (by failing to move him away from two inmates known to be dangerous) and, after an attack had occurred, again acted with deliberate indifference to Plaintiff's serious medical needs. (Doc. 1).

Plaintiff originally filed suit in the Northern District of Illinois. The case was transferred to this district on June 19, 2012, because the underlying allegations concern events at Menard Correctional Center. (Doc. 9). At threshold review, the

Court found that Plaintiff had stated two viable claims: (1) endangerment and failure to protect against McKamick, Lindbergh, Anthony, and Fitzgerald; and (2) an Eighth Amendment / deliberate indifference to serious medical needs claim against Atchison and Lashbrook. (Doc. 20). Plaintiff later filed an Amended Complaint, which underwent another threshold review. (Doc. 52). The Amended Complaint added Defendants Lindbergh, Anthony, and Fitzgerald to Plaintiff's medical needs claim. (Doc. 52). But the Court found that Plaintiff had not stated a viable claim against Defendant Atchison, and he was dismissed at that time. (Doc. 52). Plaintiff had also originally stated a claim against a John Doe Defendant, who was dismissed for failure to identify him. (Doc. 60).

Defendants McKamick and Lashbrook filed this Motion for Summary Judgment on June 16, 2014. (Doc. 69). No other Defendant moved for summary judgment. Plaintiff filed a Response on July 15, 2014. (Doc. 72). The motion ripe for disposition. For the following reasons, the Motion is **GRANTED** as to both defendants.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012) (citing FED. R. CIV. P. 56(a)). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly*

*Healthcare, LLC,* 656 F.3d 540, 547 (7th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Summary judgment has been described as the "put up or shut up moment" in the case, at which "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case"—evidence on which a reasonable jury could rely. *Porter v. City of Chi.,* 700 F.3d 944, 956 (7th Cir. 2012) (citing *Goodman v Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010)). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party (here, Plaintiff). *Anderson,* 699 F.3d at 994; *Righi v. SMC Corp.,* 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011). But the district court may not resolve issues of credibility when deciding a summary judgment motion: "Those are issues for a jury at trial, not a court on summary judgment." *Williams v. City of Chi.,* 733 F.3d 749, 752 (7th Cir. 2013).

## Factual Background

Plaintiff was incarcerated at Menard Correctional Center in early 2012. (Doc. 53, 11). He has been incarcerated in the IDOC since 2006 for aggravated criminal sexual abuse. (Doc. 70-2, 6--7). On February 5, 2012 Plaintiff was taken to the North Two cell house due to a rule infraction. (Doc. 70-2, 16). He was housed in Cell 428, a single-man cell. (*Id.* at 16-17). While housed in Cell 428, inmates Malone and Hernandez began threatening Plaintiff on a regular basis, including making threats so that the entire gallery would hear them and attempting to entice Plaintiff out into

the yard to fight. (Doc. 70-2, 18).  Plaintiff refused to go to the yard in February 2012. (Doc. 70-2, 20).  Plaintiff alleges the inmates harassed him daily because of his crime. (*Id.* at 26).

One day, Plaintiff was returning to his cell when Inmate Malone swung at him with a makeshift weapon.  (Doc. 70-2, 19).  Defendant McKamick, a Correctional Officer, was escorting Plaintiff back to his cell at the time, and Plaintiff testified that McKamick saw inmate Malone hit Plaintiff in the head with a soap-sock.  (*Id.* at 19). McKamick was behind Plaintiff holding the lead to his handcuffs.  (*Id.*).  Plaintiff turned around and said, "You saw that."  McKamick replied that he had not seen anything.  (*Id.*).  Plaintiff asked McKamick to move him away from Malone and Hernandez.  (*Id.* at 19).

Plaintiff deponed that he made other requests for protective custody, but they were always denied or ignored.  (Doc. 70-2, 70-72).  Plaintiff also testified that prior to February 24, 2012, he had written to internal affairs, his counselor, and his mental health specialist to request that Malone and Hernandez be added to his "Keep Safe From" (KSF) list.  (*Id.* at 30).

On February 24, 2012, over his strenuous objections, Plaintiff was moved into a cell with inmate Hernandez.  (*Id.* at 29-30, 32-37).  Hernandez beat Plaintiff severely and sexually assaulted him.  (*Id.* at 38).  (Hernandez forced Plaintiff to give him oral sex by threatening to stab him.  (*Id.* at 44)).  Plaintiff told neither the guards nor the med-tech that he had been beaten, because Hernandez threatened him with more beatings if he did so.  (*Id.* at 40-42).  Plaintiff did not submit a sick call slip because

Hernandez read everything he put into the bars. (*Id.* at 44). Hernandez took Plaintiff's phone list and visiting list and threatened Plaintiff by saying that he would hurt his family if Plaintiff told anyone what happened. (*Id.* at 46). Within a few days, Plaintiff was moved to another cell and told an officer that he wanted to speak to IA. (*Id.* at 49).

Lashbrook interviewed Plaintiff on March 2, 2012. (*Id.* at 50). At that time, Plaintiff refused to give her any information about the incident with Hernandez due to the threats Hernandez had made against Plaintiff's family. (*Id.*; Doc. 70-1, 1-2, 4). Plaintiff had bruises, cuts, and visible swelling at the time of the interview. (Doc. 70-2, 51). Lashbrook concedes that she observed Plaintiff with two black eyes. (Doc. 70-1, 1). Plaintiff swears that, despite the fact that he would not speak with Lashbrook, Lashbrook did not take pictures as part of her investigation and did not refer him to the health care unit. (Doc. 70-2, 51-52). Lashbrook's affidavit indicates she offered Plaintiff protective custody at that time, and that Plaintiff refused. (Doc. 70-1, 2). Plaintiff alleges that he specifically asked to see a nurse and that Lashbrook refused to let him do so. (Doc. 70-2, 52). Lashbrook's affidavit contradicts this; she says she sent him to the nurse, though there is no record of this visit in the medical records submitted by Defendants. (Doc. 70-1, p. 2).

Plaintiff told non-party Amy Konacik that he had been assaulted on March 7, 2012, and she escorted him to health care. (Doc. 70-1, 2). Plaintiff's medical records reflect that he was seen by the nurse practitioner that day, and that he then alleged he had been attacked a week and a half prior. (Doc. 70-4, 2). She ordered an X-ray,

HIV testing, and hepatitis testing.  (Doc. 70-4, 2).  Lashbrook re-interviewed Plaintiff on March 8, 2012, and Plaintiff described the physical assault at that time.  (Doc. 70-1, 5-6).

At some point, Plaintiff's father called the Warden and reported the sexual assault.  (Doc. 70-4, 6).   Lashbrook spoke personally with Plaintiff's father and re-interviewed Plaintiff on April 2, 2012.  (Doc 70-1, 2).  Plaintiff admitted to being sexually assaulted during the April 2012 interview and described the entire sequence of events in detail.  (Doc. 70-1, 2, 7-8).   On April 3, 2012, Plaintiff was evaluated by psychological professionals.  (Doc. 70-4, 6).

## ANALYSIS

### 1. *Failure to Protect - McKamick*

The Eighth Amendment places a duty on prison officials "to take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1970) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  However, an Eighth Amendment violation is only such if it meets a two-pronged test.  First, there must be a sufficiently serious risk of harm. *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer*, 511 U.S. at 834; *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997).  Second, the official must have acted with deliberate indifference to the previously mentioned risk. *Farmer*, 511 U.S. at 834.

To satisfy the first, objective prong, the inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1041 (7th Cir. 1998).

The courts have found that an inmate who is assaulted by other inmates has experienced a substantially serious harm. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).

Next, the inmate must show that prior to the incident, there was a substantial risk that harm might occur, and that defendant was aware of the substantial risk. *Farmer*, 511 U.S. at 834; *Brown*, 398 F.3d at 910; *Payne for Hicks*, 161 F.3d at 1042. This means that the officer must have had knowledge of the risk and then consciously not acted to prevent its occurrence. *Mathis*, 120 F.3d at 91; *Brown*, 398 F.3d at 913; *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). This knowledge can be grounded on such factors as the inmate's particular vulnerability or on the attacker's prior history of or propensity for violence. *Brown*, 398 F.3d at 915. While evidence that threats were made prior to an assault may be relevant, the threats will not be sufficient evidence unless they were specific enough "to suggest a high probability of an assault." *Young v. Monahan*, 420 Fed.Appx. 578, 582 (7th Cir. 2011). Repeated assaults by other inmates do not constitute specific threats either. *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (upholding district court's denial of **summary judgment where prisoner did not tell officers after the second assault "who assaulted him, why he had been assaulted . . . , or whether he continued to feel threated by the assaulting individuals"**). Prison is a dangerous environment, and not every assault that occurs will create a failure to protect claim in the absence of evidence that the officer was on notice of a specific threat. *Id.*

Here the Court finds that the soap-sock incident with inmate Malone did not put McKamick on notice that Plaintiff was at risk of substantial harm at the hands of Hernandez. The Court accepts as true Plaintiff's testimony that McKamick saw and then ignored the soap-sock incident. Certainly if Malone had been the inmate to assault Plaintiff a second time, the first soap-sock incident would have put McKamick on notice that he posed a substantial serious threat to Plaintiff. McKamick would have known who Plaintiff was at risk from, that he had a propensity towards violence, and that Plaintiff continued to feel threatened from that individual. But, to state the obvious, Malone is not Hernandez. There is no evidence in the record about what, if any, relationship Malone and Hernandez had. The actions by Malone are largely irrelevant to a consideration of how much a threat Hernandez (the ultimate assailant) posed. Taking as true Plaintiff's version of the facts, all McKamick would have known regarding Hernandez is that Plaintiff wanted to be away from him. Plaintiff also did not testify that he told McKamick that he believed that Hernandez would assault him. Plaintiff's statements to McKamick are too vague for them to constitute notice of a specific threat. *See Grieveson*, 538 F.3d at 776; *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (finding prisoner's statement that he "was having problems in the block" to vague to put officials on notice). There is no evidence in the record that Plaintiff's statements to McKamick were specific enough to put him on notice that he was at risk of being violently attacked and sexually assaulted by Hernandez if they were celled together. No reasonable jury could find so. McKamick is entitled to summary judgment.

*2. Deliberate Indifference to Serious Medical Needs- Lashbrook*

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011), (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the *Eighth Amendment* requires "deliberate indifference to a *substantial* risk of *serious* harm.") (internal quotation marks omitted) (emphasis added). Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on

whether a defendant's state of mind was sufficiently culpable. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference is not negligence; rather it is more akin to intentional wrongdoing. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) (citing *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006)). The standard is criminal recklessness, and even gross negligence will not meet this standard. *Id.* at 481.

Previously, this Court has ruled that the normal incidents of fighting do not rise to the level of a serious medical need. *Scholes v. Fayette County Jail*, No. 11-140-GPM, 2011 WL 2115874 at *4 (S.D. Ill. May 26, 2011). Bruising and swelling are not objectively serious. *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006); *see also Murrell v. Bukowski*, No. 08-2044, 2011 WL 884736 at *16 (C.D. Ill. Mar. 11, 2011) (finding "busted lip" not objectively serious); *Alvarado v. Battaglia*, 539 F.Supp.2d 1022, 1027-28 (N.D. Ill. 2008) (finding no serious medical need when plaintiff fell in the prison yard and suffered small cut and subjective pain); *Willis v. Scrogum*, No. 04-1413, 2006 WL 2597889 at * 6-7 (C.D. Ill. Sept. 8, 2006) (deciding prisoner did not

demonstrate objectively serious medical need when he had abrasions on his forehead, cheeks, and lower lip after a fight).

    At the summary judgment stage, the Court accepts Plaintiff's version of facts---that he requested to see the nurse and Lashbrook did nothing about it.  But the evidence shows that Plaintiff did not have a serious medical need.  Plaintiff testified he was too scared to request medical treatment on his own.  At the time he saw Lashbrook, nearly a week had passed since the assault.  Plaintiff has not submitted any evidence showing what treatment he needed—treatment for the types of injuries he suffered is typically no more than bandages, ice, and over-the-counter painkillers.  It is rare that those measures are called for more than a few days after injury.  Plaintiff suffered the types of injuries typical for fighting.  While such injuries (especially if inflicted based on three Defendants' setting up Plaintiff for an assault) are unfortunate, they did not motivate Plaintiff to seek medical attention on his own until he saw Lashbrook, and Plaintiff has not identified what medical care was needed at that time.  No reasonable jury could find that week-old bruises and cuts constituted a serious medical need.

    Even assuming that there was a serious medical need, Plaintiff has not submitted sufficient evidence that Lashbrook was subjectively aware of it.  Plaintiff agrees that he refused to participate in the initial interview with Lashbrook.  Therefore, the only indication of Plaintiff's injuries were the bruises on the visible parts of his body.  Plaintiff does not allege that he showed Lashbrook his torso.  He did not describe the beating in detail.  He did not describe the sexual assault.  He told

her on March 2, 2012, that the assault took place on February 24, 2012. Without knowing that Plaintiff was at risk for internal injuries or sexually transmitted diseases, Lashbrook did not have sufficient information to determine that Plaintiff was at risk for a serious medical condition. The evidence shows that when Plaintiff did received medical attention, he received X-rays to check for internal injuries and STD testing. Plaintiff did nothing to enlighten Lashbrook that he was in need of this type of treatment. His argument supposes that showing up with bruises is sufficient to make a non-medical professional aware that a prisoner may have a serious medical need. It is not.

No reasonable jury could find that Lashbrook was subjectively aware of the extent of Plaintiff's injuries on this record. For these reasons, the Motion will be **GRANTED** as to Defendant Lashbrook.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (**Doc. 69**) is **GRANTED**. The Clerk of the Court shall, at the close of the case, enter judgment in favor of McKamick and Lashbrook. The claims against Defendants Lindbergh, Anthony, and Fitzgerald remain pending. Final Pretrial Conference before Magistrate Judge Williams remains set for February 2, 2015; Jury Trial remains set for March 2, 2015.

| | |
|---|---|
| **IT IS SO ORDERED** | /s/ *Michael J. Reagan* |
| **Date:** January 20, 2015 | MICHAEL J. REAGAN |
| | Chief Judge |
| | United States District Court |

12